Sweet *v.* Irish.

---

SWEET and others, executors, &c. *vs.* IRISH.

On the 1st of May, 1834, T. loaned to I. $1500, and took his bond under seal, with this condition: "The condition of this obligation is such, that the above sum of $1500 is to remain without interest, in the hands of the above bounden I. until such time as the said T. shall demand payment of the said I.; then if the above sum is not paid, the above obligation to be of full force or virtue." *Held* that this was not a mere contract to pay on demand. That the words of the condition, taken together, imported something more than a declaration that the debt was due; and signified that the money was to remain in the hands of the obligor, and that he was to use it without interest, until called for. That a demand of payment was therefore necessary, before the statute of limitations would commence running. And the obligee having died, without making any demand of payment, leaving a will, in which he gave and bequeathed to his daughter H., who was the wife of I., the obligor, the interest of the bond during her life; and if she should die before her husband, then the executors were directed to collect the $1500, with the interest from the time of her decease; but in case she should survive I., then the executors were directed to collect the money from I.'s estate and pay her the interest thereof each year, and so much of the principal as her necessities should require; it was *further held* that this bequest suspended the payment, as well as the demand of payment, during

Sweet *v.* Irish.

the joint lives of I. and his wife. That so long as they lived, the principal sum was not due and payable, and the statute of limitations did not begin to run until the death of one of them, at which time the executors were directed to collect the money, and when, by a demand of payment, they could make the money payable.

That by accepting the money upon a contract wherein it was stipulated that there was to be no interest, and the principal payable only at the will of the obligee, the obligor put it into the power of the latter to postpone the day of payment to such time as suited his convenience and pleasure.

ON the 1st of May, 1834, David Tallman loaned to the defendant $1500, and took his bond under seal, with this condition: "The condition of this obligation is such, that the above sum of $1500 is to remain without interest in the hands of the above bounden Jonathan Irish, until such time as the said David Tallman shall demand payment of the said Irish; then if the above sum is not paid, then the above obligation to be of full force or virtue. Given under my hand and seal," &c.   JONATHAN IRISH. [L. S.]

David Tallman never demanded the money, in his lifetime. On the 29th of October, 1839, he made his last will and testament, containing the following clause: "4th. I give and bequeath to my daughter, Hannah Irish, the interest of a bond for fifteen hundred dollars, I hold against her said husband (defendant) during her natural life; and if she should die before her said husband, then I direct my executors to collect said sum, with interest from the time of her decease, to be hereinafter disposed of. But in case she should survive her said husband, then I direct them to collect it from her said husband's estate, and pay her the interest thereof yearly, and every year, and so much of the principal as her necessities may require."

The testator, Tallman, died in 1843, and the plaintiffs are his executors. After the testator's death, and in the lifetime of Hannah Irish the defendant's wife, the plaintiffs, as his executors, commenced an action in the supreme court, against the defendant Irish, upon the bond; and Justice Barculo, before whom the cause was heard at special term,

Sweet *v.* Irish.

decided that upon the true construction of the bond and will, the executors were not authorized to collect the former during the lives of the defendant and his wife. He accordingly directed a judgment to be rendered for the defendant, but neither party was to have costs against the other, nor was the judgment to be a bar to a subsequent suit after the death of either the defendant or his wife.

September 5th, 1860, the defendant's wife died, and the executors, in October thereafter, brought this action to recover the amount of the bond and interest from that date. To this the defendant pleaded the statute of limitations.

The action was tried at the circuit, before Justice EMOTT, without a jury. At the close of the testimony, the justice rendered a judgment for the plaintiffs for $1663.54 with costs ; and assigned the following reasons for such judgment :

"I am of opinion that this bond, being a continuing security, especially when construed with the aid of the will, cannot be considered as due until a demand of payment had been made. This would prevent the application of the statute of limitations.

In addition to this, the fair import and effect of the suit and judgment in the lifetime of the wife, to which the defendant was a party, was to estop him from setting up this defense in the present suit, or to permit this suit to be brought, notwithstanding the lapse of time.

On both these grounds the defense is overruled, and the plaintiffs must have judgment."

The defendant made a case and exceptions, and appealed to the general term.

*John Thompson,* for the appellant.

*J. F. Barnard,* for the plaintiffs.

*By the Court,* BROWN, J. The defense to the plaintiffs' action is the statute of limitations ; and it becomes necessary to ascertain when the money upon the bond mentioned in

the pleadings became due and payable; for then the statute began to run against the demand. In most if not all the aspects in which the question can arise, a promissory note payable on demand is due and payable presently. No demand is required in order to enable the holder to maintain an action upon it. And although a demand and notice of non-payment is required, to charge the indorser upon such a note, such demand and notice proceed upon the theory that the note is presently due; for it must be made within a reasonable time, and what is a reasonable time, depends upon the circumstances affecting each particular case. (*Sice* v. *Cunningham*, 1 *Cowen*, 397. *Haxtun* v. *Bishop*, 3 *Wend.* 15.) In the case of *Wenman* v. *The Mohawk Ins. Co.*, (13 *Wend.* 267,) it is said, "the demand is not parcel of the contract, but it is used to show that the debt is due. There are cases where the note is payable at a certain time, as one month after demand, in which it has been decided that the statute does not run until the time has elapsed after demand made. But in such cases it is obvious, from the terms of the contract, an actual demand was contemplated by the parties before the note became due." In the case of *Thorpe* v. *Coombe*, (8 *Dow. & Ryl.* 347,) the note was made payable two years after demand, and it was held that the statute did not begin to run until the two years after an actual demand had been made. The same rule obtained in *Thorpe and wife* v. *Booth*, (*Ryan & Moody*, 388,) where the note was made payable twenty-four months after demand. The question would therefore seem to resolve itself into one of intention, to be gathered from the written contract, from an examination of which the courts are to determine whether the parties to the note, or other written obligation, intended the money should be payable presently or at a future time.

The bond upon which this action is brought was made and dated on the 1st day of May, 1834, by the defendant, Jonathan Irish, to the plaintiffs' testator, David Tallman, in the penal sum of $1500, with the condition thereunder written

in the following words : " The condition of the above obligation is such, that the above sum of $1500 is to remain without interest in the hands of the above bounden Jonathan Irish until such time as the said David Tallman shall demand payment of the said Irish. Then if the above sum is not paid, then the above obligation to be in full force or virtue." This is not a mere contract to pay on demand. The words of the condition, taken together, import something more than a declaration that the debt is due. The words, " that the above sum of $1500 is to remain without interest in the hands of the above bounden Jonathan Irish until such time as the said David Tallman shall demand payment," signify that the money was to remain in the hands of the obligor, and that he was to use it without interest until called for. Otherwise the words " without interest", would be without sense and meaning ; for the law is well established, as a general rule, that notes and written obligations payable on demand, draw no interest until after the time of demand made or suit brought, which is deemed equivalent to a demand of payment. (*Chitty on Bills,* 10*th ed.* 681.) The money was to remain in the hands of the obligor without interest until demand of payment, and thus the demand became a material stipulation of the contract.

David Tallman died in 1843, having made no demand of payment of the money mentioned in the bond. He left a last will and testament, which was duly proved and letters thereon were issued to the plaintiffs. In this will he gives and bequeathes to his daughter Hannah, who was the wife of the obligor and defendant Jonathan Irish, " the interest of the bond for $1500 I hold against her husband during her natural life ; and if she should die before her husband, then I direct my executors to collect said sum, with the interest from the time of her decease, to be hereinafter disposed of. But in case she should survive her said husband, then I direct them to collect it from her husband's estate and pay her the interest thereof yearly and every year, and so much of the

principal as her necessities require." The bequest of the interest to the wife, in 1843, was in effect a bequest to the husband during their joint lives ; for unless the equity courts should interpose for the protection of the wife, he was legally entitled to collect the interest and to apply it to his own use ; in short, to deal with it as his own. As debtor, it was his duty to pay, and as the husband of the legatee he could receive, and so nothing was to be paid. The effect of the will—which was received in evidence upon the trial under the defendant's exception—is material upon the question of the statute of limitations. Because, assuming that I am right in thinking the money was not due until after an actual demand of payment, then the bequest of the will suspended the payment, as well as the demand of payment, during the joint lives of Jonathan Irish and Hannah his wife. So long as they lived, the principal sum was not due and payable, and the statute did not begin to run until the death of one of them, at which time the executors were directed to collect the money. By accepting the money upon a contract wherein it was stipulated there was to be no interest, and the principal payable only at the will of the obligee, the obligor put it into the power of the latter to postpone the day of payment to such time as suited his convenience and pleasure. This right he has chosen to exercise in his will, and has therein named the day of the death of either the obligor or his wife Hannah as the time when the executors might make the money payable and due by a demand of payment. Hannah, the wife of the defendant, died on the 5th of September, 1860, sometime before the commencement of this action.

The view which I have taken of the contract disposes of the only question involved in the case. There is, however, an additional piece of evidence, received also under the defendant's objection and subject to his exception, to which I will briefly refer. It is an abstract of the record of a judgment in this court between the parties to this action, wherein the same bond is the cause of action, it having been pros-

Sweet *v.* Irish.

ecuted to recover the money mentioned in the condition thereof. The pleadings are not made a part of the evidence, and we only know what was the defense set up in the answer by inference. The judgment was rendered by the late Mr. Justice Barculo, and he determines that the executors were not authorized to collect the money mentioned in the condition of the bond "during the lives of the defendant and his wife. If the wife should invoke the aid of the court to secure her the interest, it might be proper to interfere; but as long as she is satisfied with things as they are, the plaintiffs cannot collect the principal. Judgment must be rendered for the defendant; but neither party is to have costs against the other. Nor is this judgment to be a bar to a subsequent suit after the death of either the defendant or his wife." This record was intended by the plaintiffs to show that the collection of the money had been stayed by the judgment, and on that account the statute of limitations did not run against the plaintiffs' claim. The defendant objected to the evidence, for the reason that it was irrelevant, and that the time when the money became due and payable must be determined by the language of the bond itself. If I am right in the construction I have put upon the instrument the judgment was not material to the plaintiffs' case, and its introduction as evidence did not prejudice the defendant.

The judgment should be affirmed.

[DUTCHESS GENERAL TERM, May 12, 1862. *Emott, Brown, Scrugham* and *Lott,* Justices.]